## AFFIDAVIT OF SPECIAL AGENT JOHN MERCER

I, Special Agent John Mercer, depose and state as follows:

1.I am presently a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been employed as such for approximately 33 years. I am currently assigned to work with other federal, state, and local law enforcement agencies in a task force effort focusing on federal firearms, explosives and controlled substance violations. Based on my training and experience as an ATF special agent, I am familiar with federal firearms and narcotics laws.

2.I make this affidavit in support of an application for arrest warrants for Riquelme Henrique De Aguiar FERREIRA, aka "Koringa" ("FERREIRA"), and Victor Eduardo Santos DE SOUZA, aka "Vitor" ("DE SOUZA"), for federal firearms violations.

3.There is probable cause to believe that FERREIRA and DE SOUZA have committed the following federal crimes: (1) engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and (2) conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371.

4.During this investigation, two Cooperating Witnesses ("CW-1" and "CW-2") made controlled purchases of Privately Made Firearms ("PMF"), sometimes referred to as "ghost guns" and commercially manufactured ammunition. A PMF does not have a serial number like commercially manufactured firearms. Based on my training and experience, a PMF satisfies the definition of "firearm" for the purposes of 18 U.S.C. § 922(a)(1)(A).

5.CW-1 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-1's identity and have met with CW-1 personally. CW-1 has provided accurate, truthful, and reliable information to law enforcement,

including the ATF and Homeland Security Investigations ("HSI"), and local police departments in the past and continues to do so to the present. CW-1 has no criminal history. CW-1 is presently receiving monetary and immigration benefits from the ATF. CW-1 is also seeking protection from retaliation based upon CW-1's cooperation with law enforcement in this case, including possible relocation.

6. CW-2 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-2's identity and have met with CW-2 personally. CW-2 has provided accurate, truthful, and reliable information to law enforcement, including the ATF and HSI, and local police departments in the past and continues to do so to the present. CW-2 has a criminal history which includes four adult arrests for operating a motor vehicle without a driver's license and no convictions. CW-2 is presently receiving monetary benefits from the ATF. CW-2 is also seeking protection from retaliation based upon CW-2's cooperation with law enforcement in this case, including possible relocation.

7. CW-3 has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of CW-3's identity and have met with CW-3 personally. CW-3 has provided accurate, truthful, and reliable information to law enforcement, including the ATF, in the past and continues to do so to the present. CW-3 has a criminal history which includes five adult arrests resulting in fourteen entries on his/her criminal history. CW-3 is presently receiving monetary and immigration benefits from the ATF. CW-3 is also seeking protection from retaliation based upon CW-3's cooperation with law enforcement in this case, including possible relocation.

8. I have conducted and been involved in hundreds of firearm-related investigations, arrests, seizures, undercover operations and search warrants. I have written and/or participated in

the execution of numerous state and federal search warrants, and have debriefed hundreds of defendants, informants, and witnesses with personal knowledge regarding illegal firearms possession and trafficking activities and the operation of firearms trafficking organizations. I have also received training through my position as an ATF Special Agent involving firearms trafficking. Based upon my training and experience, I am familiar with firearms traffickers' methods of operation, including acquisition, manufacture, distribution, storage, and transportation of firearms.

9. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from confidential informants, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of supporting issuance of arrest warrants for FERREIRA and DE SOUZA, I have not presented every fact learned during the investigation, but only that information necessary to fully support probable cause for arrest warrants.

10. In May of 2023, CW-2 informed investigators that FERREIRA was one of the leaders of the "Trem Bala" street gang in the Framingham, Massachusetts area. According to CW-2, Trem Bala (which translates from Portuguese to English as "Bullet Train") is involved in drug trafficking, the illegal possession and sale of firearms, and violent crimes (including armed robberies and assaults).

11. On May 30, 2023, CW-1 and CW-2 made a controlled purchase of a 9mm pistol and ammunition from FERREIRA and DE SOUZA in Revere, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. For security purposes, agents instructed CW-2 to travel to the deal with the

targets. Agents equipped CW-1 with an undercover ("UC") vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with FERREIRA and DE SOUZA. Agents the provided CW-1 with official government funds in order to purchase the pistol. Surveillance personnel were assigned to the area of the Northgate Shopping Center parking lot, Revere, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with CW-2 (who had traveled to the deal with the two targets for security purposes), FERREIRA and DE SOUZA in the UC vehicle and purchased a 9mm pistol and ammunition. CW-1 paid DE SOUZA $1400 for the pistol and ammunition. After the transaction, CW-1 observed DE SOUZA remove another pistol from his groin area and place the pistol in his jacket pocket as he was exiting the UC vehicle. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Polymer 80 (P80), PMF, Model 9F940V2, 9mm pistol (no serial number) and a magazine loaded with thirteen (13) rounds of Winchester and three (3) rounds of Blazer 9mm ammunition. Agents again searched CW-1 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from FERREIRA and DE SOUZA.

12. On August 5, 2023, CW-1 and CW-2 made a controlled purchase of a 9mm pistol and ammunition from FERREIRA and DE SOUZA in Natick, Massachusetts. Prior to the controlled purchase, ATF agents met with and searched CW-1's person for contraband with negative results. Again, for security purposes, agents instructed CW-2 to travel to the deal with the targets. Agents equipped CW-1 with a UC vehicle and a recording device which recorded both audio and video; the device worked properly and recorded the transaction with FERREIRA and DE SOUZA. Agents then provided CW-1 with official government funds in order to

purchase the pistol and ammunition. Surveillance personnel were assigned to the area of the Home Depot parking lot, Natick, Massachusetts. CW-1 was under constant surveillance by agents/officers during the operation. CW-1 met with CW-2, FERREIRA and DE SOUZA in the UC vehicle and purchased a 9mm pistol and ammunition. CW-1 paid DE SOUZA $1400 for the pistol and ammunition. After the transaction, CW-2 reported that he/she observed DE SOUZA carrying two pistols in his waist area. CW-1 left the area and was kept under surveillance as he/she proceeded to a prearranged meeting site. At the meeting site, CW-1 provided agents with a Polymer 80 (P80), PMF, Model PF940C, 9mm pistol (no serial number) and a magazine loaded with twelve (12) rounds of Sellier Bellot 9mm ammunition. Agents again searched CW-1 for contraband and found none. I have reviewed the recording of the transaction, which confirmed CW-1's account that CW-1 purchased the pistol and ammunition from FERREIRA and DE SOUZA.

13. In early June of 2024, CW-2 exchanged multiple text messages and photos via the Instagram social networking service with FERREIRA. FERREIRA's messages and posts indicated he travelled to South Carolina and met with the target of an ongoing ATF firearms trafficking investigation. FERREIRA sent pictures of multiple firearms and reported that he was bringing the firearms back to Massachusetts to sell. FERREIRA's Instagram handle/unique username is 01_koringa_33.

14. During May of 2024, CW-3 informed agents of communications with Alason FERREIRA-PEIXOTO.[1] CW-3 informed agents that he/she had met with FERREIRA-PEIXOTO at the Yarmouth Resort in West Yarmouth, MA. CW-3 reported FERREIRA-

---

[1] FERREIRA-PEIXOTO was arrested for federal firearms charges in September 2024 in this District.

PEIXOTO stated he had a firearm source of supply in North Carolina and could acquire large quantities of firearms for sale. On June 4, 2024, FERREIRA-PEIXOTO told CW-3 that he was going to acquire firearms and on June 5, 2024, FERREIRA-PEIXOTO sent CW-3 photographs and videos depicting at least six (6) suspected pistols. One of the suspected firearms was a Glock pistol with a gold-colored slide.

15. On June 6, 2024, CW-3 purchased two 9mm pistols from FERREIRA-PEIXOTO at the Yarmouth Resort. One of the firearms was identified as a Glock 45, 9mm pistol, bearing serial number AGGE381. Agents noted the Glock 45 had a gold slide and appeared to be the same pistol previously sent to CW-3 by FERREIRA-PEIXOTO. During a following controlled buy on June 14, 2024, FERREIRA-PEIXOTO told CW-3 that he was late to the meet on June 6 because he was driving back from North Carolina. Identified below is a photograph of the Glock 45, 9mm pistol, bearing serial number AGGE381.



16. During this investigation, agents have identified FERREIRA's Instagram account, more fully described as the account bearing the username: *"01_koringa_33"* ("FERREIRA Instagram Account'). In June 2024, CW-2 provided agents with screen captured images taken from

the FERREIRA Instagram Account, as well as conversations on Instagram messenger between FERREIRA and CW-2. Agents have reviewed photographs associated with the FERREIRA Instagram Account which are consistent with FERREIRA being the user of the account.

17. On June 5, 2024, CW-2 informed agents that he/she communicated with FERREIRA via the FERREIRA Instagram Account. CW-2 reported FERREIRA stated he was traveling to South Carolina to acquire firearms. On June 5, 2024, CW-2 took a "screenshot" (i.e. still image) of a story posted to the FERREIRA Instagram Account. The photograph depicted the user, believed to be FERREIRA, holding a Glock style pistol with a black frame and gold slide. Agents noted the pistol appears to be the same firearm purchased by CW-3 in Yarmouth, MA, from FERREIRA-PEIXOTO. The photograph posted to the FERREIRA Instagram Account is identified below:



18. Agents reviewed the photograph posted to the FERREIRA Instagram Account story and observed a tagged location of Goose Creek, SC, as well as a "sticker" indicating a time of 8:05 P.M. Agents also observed the story was posted to the FERREIRA Instagram Account five hours

prior to CW-2 taking a screen capture of the story. Based on my training and experience, as well as conversations with other agents and officers involved in investigations utilizing social media platforms, I am aware that photographs and videos posted to a "story" can be uploaded directly from a mobile device's library. For these reasons, I am aware that the date and time associated with a particular "story" or "post" does not necessarily indicate that the photograph or video was taken at the time that the "story" or "post" was uploaded to an account.

19. During the same period (June 4, 2024 – June 6, 2024), FERREIRA sent additional screenshots and voice messages via Instagram messenger to CW-2 indicating he had travelled to Goose Creek, South Carolina to purchase additional firearms and bring them back to Massachusetts for resale.

20. CW-2 recorded two voice messages that were sent by FERREIRA to CW-2. During the first voice message, FERREIRA told CW-2 he was going to South Carolina and encouraged CW-2 to front him the money for the firearms through a mobile payment service. During the second voice message, FERREIRA stated he had a Glock, Model 17, 9mm pistol and a Glock, Model 19, 9mm pistol that he could sell to CW-2 for $1600 each on the following day. FERREIRA stated that the pistols were "clean" and did not include ammunition.  CW-2 reported that he/she had a conversation with FERREIRA shortly after FERREIRA returned to Massachusetts from South Carolina.  During the conversation, FERREIRA told CW-2 he sold the firearms he had brought back from South Carolina.

21. Following the controlled purchase on June 6, 2024, a trace request was submitted for the Glock 45, 9mm pistol, bearing serial number AGGE381. A review of Firearms Trace Summary #T20240289649, identified the Glock pistol, was purchased on April 27, 2023, in North Charleston, SC.

22. On July 29, 2017, FERREIRA entered the United States. FERREIRA was determined by authorities to be an alien in the United States who had not been admitted or paroled. FERREIRA was photographed and released into the United States. I obtained an arrest photo of FERREIRA from the Commonwealth of Massachusetts, Department of Criminal Justice Information System ("CJIS") AFIS-R module. I have reviewed and compared this photo of FERREIRA to the videos of the gun buys on May 30, 2023, and August 5, 2023. The photos and the videos are of the same person – Riquelme Henrique De Aguiar FERREIRA.

23. On March 29, 2021, DE SOUZA entered the United States. DE SOUZA was determined by authorities to be an alien in the United States who had not been admitted or paroled. DE SOUZA was photographed and released into the United States. I obtained an arrest photo of DE SOUZA from the CJIS AFIS-R module. I have reviewed and compared this photo of DE SOUZA to the videos of the gun buys on May 30, 2023, and August 5, 2023. The photos and the videos are of the same person – Victor Eduardo Santos DE SOUZA.

24. On August 5, 2024, James Diozzi, an ATF Inspector in the Boston Field Office, queried ATF's national data base of all federally licensed firearms dealers and determined that FERREIRA and DE SOUZA are not federally licensed firearms dealers.

## CONCLUSION

25.     Based on the above, I believe probable cause exists to conclude that FERREIRA and DE SOUZA, without being a federally licensed dealer, did knowingly and willfully engage in the business of dealing in firearms, in violation of 18 U.S.C. §922(a)(1)(A), and did also knowingly combine, conspire, confederate and agree with each other and others, to engage in the business of dealing in firearms without a federally issued license to do so, in violation of 18 U.S.C. §371.

       _John Mercer /by Paul G. Levenson_
       John Mercer
       Special Agent, ATF

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____
HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this __7th__ day of November, 2024